FROST et al. v. DISTRICT COURT OF FIRST JUDICIAL DISTRICT IN AND FOR BOX ELDER COUNTY et al.

No. 6007.   Decided November 2, 1938.   (83 P. 2d 737.)

For opinion on rehearing see 96 Utah 115, 85 P. 2d 601.

*B. C. Call,* of Brigham, for plaintiffs.

*George D. Preston,* of Logan, for defendants.

MOFFAT, Justice.

The issues herein are presented by an application for a writ of certiorari and a demurrer thereto. The proceeding is brought to determine the validity of an order made by the District Court of the First Judicial District of the State of Utah—Honorable Lester A. Wade, Justice of the Second District, sitting in lieu of Hon. Lewis Jones, Judge of the First District, the latter being disqualified.

The order in question recites that the corrections made in a former judgment of the court were made to correct clerical errors and omissions. Defendants take the position that the changes were clerical only and do not affect the substantive provisions of the decree. Applicants maintain the changes are not clerical but amount to a substantial reversal of the decree. We are of the opinion the changes made are substantial and not clerical, and that the court was without power to make changes other than merely clerical ones after the expiration of the term of court in which the judgment was entered.

Defendants maintain that an examination of the record will disclose that the order complained of not only does not reverse or change any former judgment, and does not change the judgment in any material way, but only corrects the same so as to make it conform with the decision of the court. This position is based, at least in measure, upon the claim that the oral decision of the court, transcribed by the reporter, is the judgment of the court.

The judgment and findings signed by the judge of the court constitute the only findings and judgment that may be considered. What a judge says in orally indicating what his decision will be, may be of aid to counsel in preparation of the findings and judgment; but the findings and judg-

ment actually signed may not be disturbed by a showing as to what may have been in the judge's mind before. The signed findings and judgment in so far as disclosed by the record indicate what was in the judge's mind when he signed them. Between the time of making an oral statement as to matters pertaining to the cause, the findings, or judgment, the court may have changed its mind. If there are variances or conflicts, they must be pointed out, and (by proper proceedings) remedied, while the court still has jurisdiction of the cause.

There follows a brief statement of the allegations of the petition admitted by the demurrer and shown by the record. Much of the material stated therein is beside the question, but it presents a historical account of the proceedings heretofore had out of which the issues here have developed.

It appears that on June 14th, 1923, a suit was begun involving the water rights still the subject of controversy. This suit was disposed of and another began on February 4th, 1928. Findings and a decree were made in this later case on November 14th, 1932. It is the judgment of this later case that was sought to be amended and by order of the court was amended.

This judgment of November 14th, 1932, was never appealed from.

On February 15th, 1933, plaintiffs filed a notice of intention to move for a new trial and a motion to amend and modify the findings of fact. It was then sought to modify or make more certain matters relating to priority.

On the 13th day of March, 1933, the same judge who signed the findings and judgment, denied the motion for a new trial, and denied the motion to amend or modify the findings of fact as made and signed.

More than four years after the denial of these motions to amend or modify, parties, not parties to the original proceeding, claiming to be their successors, asked to be and were made parties to the action in which the judgment was

entered and sought to have the findings and decree amended or modified.

Plaintiffs in this action filed a demurrer and motion to strike the motion to modify or amend and objected to the substitution of parties, setting up several grounds, among which were: That the court was without jurisdiction to amend the decree or correct the alleged clerical errors; that the judgment and decree entered and filed November 14th, 1932, was a final judgment; and, that no appeal had been taken from that judgment.

The amendments or modifications allowed by the trial court and claimed by defendants to be corrections of mere clerical errors and which are objected to by plaintiffs, are shown in capital letters. The capitalized words were inserted in the original findings by order of the trial court, and this review seeks the elimination thereof:

"Second. That the said Edward S. Frost, Sr., WITH A PRIORITY OF 1891, shall have the right to divert the waters from the said right-hand fork or Cotton Creek by means of the Frost ditch running from that stream to his old home and corrals, and also shall have the right to divert the said aforementioned waters from the dams on both the left-hand fork and the right-hand fork of said East Grouse Creek designated on the maps known as Exhibits 'A' and '1' in case No. 3627 in the Findings of Fact herein referred to as 'Original Dam' and by figures 1, 2, 3, 4, 5, 5a, 6, 7, 8 and 9 in red ink, and also designated on that certain map introduced in evidence in this case as Exhibit 'f' as 'Original Dam' or No. 14, and by figures 13, 15, 16, 17, 18, 20, 4, 12, 10 and 9, and to use all ditches leading from said dam, and in diverting said waters from such points and dams as shown on said maps, PROVIDED, THAT THE RIGHTS OF EDWARD S. FROST, SR., AS SET FORTH HEREIN SHALL HAVE A PRIORITY DATE OF 1891 AND SUBJECT TO A PRIORITY DATE OF 1876 IN FAVOR OF ALLEN N. TANNER AS HEREINAFTER SET FORTH. Said dams are further identified as being located in approximately the following points: (The location of the dams is then set forth) provided, however, that during the winter months of any year when ice is formed in the said Frost ditch to the extent that waters therein flowing are forced over the banks thereof to and upon the lands of Clara E. Frost in Section 7, Township 12 North, Range 18 West of the Salt Lake Meridian, then the waters shall be turned

from the said Frost ditch and permitted, during such period of freezing weather, to flow down the natural channel until the said ditch is sufficiently opened to carry said water, and provided, further, that the said Frost shall not use the said water for the irrigation of any other or additional lands than those herein particularly described, but may, so long as he does not thereby increase the quantity of water used by him nor the area of lands irrigated, make and use such other and additional ditches as may be found desirable in the convenient and economic use of the waters herein permitted to use by him.

"Third: That the title of the said Edward S. Frost, Sr., in and to the use of the said waters, as hereinbefore specified WITH A PRIORITY DATE OF 1891 is hereby quieted, and the plaintiffs, and each of them, and their agents and servants, and all persons claiming, or to claim, by, through, or under them, or either of them, are hereby restrained and forever enjoined from in any manner interfering with the said defendant Edward S. Frost, Sr., in the irrigation of said lands above described from the first day of October of each year to the first day of June of the next succeeding year, and from interfering in any way with the use of the water of said East Grouse Creek and the right-hand and left-hand forks thereof as herein specifically provided. PROVIDED THAT AT ALL TIMES AND IN SEASONS WHEN THERE IS NOT AMPLE AND SUFFICIENT WATER TO PROVIDE FOR THE USE HEREUNTO GRANTED TO ALLEN N. TANNER WITH A PRIORITY DATE OF 1876 THEN THE SAID EDWARD S. FROST, SR., SHALL PERMIT WATER TO RUN BY, DOWN AND ACROSS HIS LANDS ABOVE DESCRIBED AND INTO THE LANDS, CANALS, CREEKS, DITCHES AND WATERWAYS OF THE SAID ALLEN N. TANNER IN COMPLIANCE WITH THE PROVISIONS HEREIN CONTAINED.

"Fourth: That the plaintiffs Allen N. Tanner and the State of Utah are the appropriators of and entitled to the use of all of the waters of East Grouse Creek between the first day of October of each year and the first day of June of the next succeeding year, both dates inclusive, WITH A PRIORITY OF 1876 after the said waters have passed over and through the lands of the said Frost to the lands of said plaintiffs for the watering of livestock and for culinary and domestic purposes and for the irrigation of the following described lands, to wit:" (Then follows description of land and rest of Decree that hasn't been changed.)

The changes proposed to be made by the motion to "amend and modify" the decree, and made by the court as indicated

above, are more than and other than a correction of clerical errors. That there is a variance between what the judge orally said as to what the findings and judgment should be and the findings and judgment actually ▪ prepared, signed and filed, does not establish the fact that the judgment contained clerical errors. In a decree relating to water rights, dates of priority in fluctuating streams or sources of supply with periods when the supply is insufficient to supply all, and some must go without such priority dates, if not the most important, are, next to quantity, the most important elements of such decree. To vary the quantity or to change the date of priority while priorities exist and are important, may have the effect of reversing the judgment or so materially modifying it as to deprive one entirely of a right which he had, or maintained that he possessed and enjoyed. The changes made by the trial court amount to substantive changes upon which the parties should have a right of appeal. The time for either party to appeal has long since expired, judgments must become final. It would be an intolerable situation if, after the time for appealing had expired, the court could modify or amend a judgment so as to materially affect the rights of parties and leave them without appeal. More than four years having elapsed since this judgment was entered, no right of appeal can now exist. No steps were taken within the six month period provided by statute within which an appeal must be perfected.

It may not be successfully maintained that the words inserted into the findings and decree and above printed in capitals are mere clerical errors. It should not be necessary to suggest authorities upon that point. However, the following indicate what has been or may be done in instances regarded as clerical errors. In volume 11 of Corpus Juris we find the following under the heading of Clerical Error, on page 839, we quote:

"A clerical error exists when without evident intention one word is written for another, when the statement of some detail is omitted

the lack of which is not a cause of nullity, or when there are mistakes in proper names or amounts made in copying but which do not change the general sense of a record; a mistake in copying; a mistake in copying or writing; a mistake of a clerk in writing; a mistake in copying or transcribing a written instrument; a mistake which naturally excludes any idea that its insertion was made in the exercise of any judgment or discretion, or in pursuance of any determination; an error made by a clerk or by a transcriber; an error of a clerk or subordinate officer in transcribing or entering an official proceeding ordered by another; an error which appears to be such on the face of an instrument, and the nature of which is ascertainable from the instrument itself; an error made by a clerk in transcribing, or otherwise, which must be apparent on the face of the record, and capable of being corrected by reference to the record only."

In Section 141 of Volume One of the Fifth Edition of Freeman on Judgments, the following pertinent language appears:

"As a general rule, unless control over it has been retained in some proper manner, or a statute otherwise provides, no final judgment can be amended after the term at which it was rendered or after it otherwise becomes a final judgment. The power of courts to correct clerical errors and misprisions and to make the record speak the truth by nunc pro tunc amendments after the term does not enable them to change their judgments in substance or in any material respect. And this is true even though the judgment has not been formally entered of record by the clerk where such entry is not essential to its validity. Consequently it is well settled that, in the absence of statute permitting it; the law does not authorize the correction of judicial errors, however flagrant and glaring they may be, under the pretense of correcting clerical errors.

"* * * The court cannot under the guise of correcting its record put upon it an order or judgment it never made or rendered, or add something to either which was not originally included although it might and should have so ordered or adjudged in the first instance. It cannot thus repair its own lapses and omissions to do what it could legally and properly have done at the right time. A court's mistake in leaving out of its decision something which it ought to have put in, and something in issue of which it intended but failed to dispose, is a judicial error, not a mere clerical misprision, and cannot be corrected by adding to the entered judgment the omitted matter on the theory of making the entry conform to the actual judgment rendered. So if

a solicitor inadvertently omits from a decree some clause which he intended to insert, and presents the decree to the judge, who adopts it as the judgment of the court, this is no ground for an amendment, for the facts do not show that the court intended to pronounce any different decree from the one prepared by the solicitor; and to change the record would be equivalent to exercising a revisory power over the judgment itself by the same authority that pronounced it."

The above quotations are supported by illustrative cases.

Having concluded the "amendments and modifications" are not clerical errors, the only question remaining is whether the court had jurisdiction to make the amendments or modifications.

In the instant case there was no retention of jurisdiction of the trial court for any purpose. Thus, the instant case is distinguished from the case of *Garrison, State Engineer,* v. *Davis et al.,* 88 Utah 358, 54 P. 2d 439. In that case it was indicated that no claim was made that the trial court was without power to retain jurisdiction of the cause for such purposes as it saw fit; also that independent of statute or retention of jurisdiction for such purposes as might be specified, the trial court had inherent power to correct clerical errors at any time and to make the judgment entry correspond to the judgment of the court.

Where there has been no retention of jurisdiction by the trial court, unaided by statute, it has no power after the expiration of the term and certainly after the time for appealing has expired, to change or modify its judgment in a substantial or material respect. This is well settled law.

Defendants' contention does not seem to controvert this. What is contended is that the amendments and modifications are merely clerical. With this we cannot agree.

The amendments and modifications ordered by the trial court are directed to be vacated, stricken out and set aside, and the original judgment re-instated as the judgment of the court. Plaintiff to recover costs.

FOLLAND, C. J., and HANSON, and LARSON, JJ., concur.

WOLFE, Justice (concurring).

I concur, but I reserve from my concurrence what has been said in an effort to distinguish *Garrison, State Engineer,* v. *Davis,* 88 Utah 358, 54 P. 2d 439, 443. If the date of priority attempted to be included in the judgment as an amendment is not correcting a clerical error—and I think it is not—then certainly including a priority date in the Garrison Case under a power retained to make only "minor corrections" was equally error. As stated in the opinion, I think the inclusion of a priority date is something quite substantial and not clerical or minor. My only bewilderment is as to how the Garrison and this case can be distinguished. To distinguish that case from the present by saying that in that case the trial court "had inherent power 'to correct clerical errors at any time and to make the judgment entry correspond with the judgment rendered'" seems to entirely misconstrue what the court did in that case. The decision in that case did not rest on a power to correct clerical errors but on a retained jurisdiction to make "minor" corrections. This court held that "minor" and "major" were comparative terms and therefore conveniently treated the retained jurisdiction to include not only the power to make "minor" corrections, but any correction. Under such holding it held that the insertion of a date of priority which even substantially affected the rights of others might be made.

I do not think this case and the Garrison Case can be reconciled. But I think this case states the law correctly and that the Garrison Case was wrongly decided and I am contented that we do not repeat the error of that case in this one.