2007 UT App 99

**EASTERN UTAH BROADCASTING AND WORKERS' COMPENSATION FUND, Petitioners,**

v.

**LABOR COMMISSION and Nancy M. Wood, Respondents.**

No. 20060370–CA.

Court of Appeals of Utah.

March 22, 2007.

Floyd W. Holm, Salt Lake City, for Petitioner Workers' Compensation Fund.

Alan L. Hennebold, Labor Commission, Salt Lake City, and Bradford D. Myler and Jay Barnes, Myler Law Office, Orem, for Respondents.

Before Judges BILLINGS, McHUGH, and ORME.

## OPINION

McHUGH, Judge:

¶1 Eastern Utah Broadcasting and Workers' Compensation Fund (collectively, Petitioners) seek review of an order issued by the Utah Labor Commission Appeals Board (the Appeals Board) on remand after a prior decision from this court, confirming the award of occupational disease benefits under Utah Code section 34A–3–106 to Nancy M. Wood. *See* Utah Code Ann. § 34A–3–106 (2001). Because we conclude that the Appeals Board incorrectly applied the standard for determining whether Wood's mental condition was legally caused by her employment, we remand for further proceedings consistent with this decision.

## BACKGROUND

¶2 Wood was employed by Eastern Utah Broadcasting (EUB), from 1980 until March 2000, as both a salesperson and a sales manager. In 1986, Wood took a medical leave of absence after experiencing her first anxiety attack, allegedly caused by extraordinary work related stress. Wood continued to suffer from stress-related anxiety attacks for the duration of her employment at EUB and on March 16, 2000, she suffered a nervous breakdown. Since that time Wood has been unable to work.

¶3 In February 2001, Wood filed an Application for Hearing with the Labor Commission, seeking disability compensation under the Utah Occupational Disease Act for mental stress related to her employment. *See* Utah Code Ann. §§ 34A–3–101 to –112 (2001). To receive compensation under the statute, Wood was required to prove she suffered "extraordinary mental stress arising predominantly and directly from employment." *Id.* § 34A–3–106(2)(a). After her hearing, an administrative law judge (ALJ) found that Wood's stress was a compensable occupational disease but referred Wood's claim to a medical panel to determine what portion of her disease was attributable to work related factors. The medical panel determined that 50% of Wood's occupational disease was attributable to work related stress and 50% was attributable to non-work

related stress. Based on these findings, the ALJ ordered Petitioners to pay Wood permanent total disability compensation pursuant to Utah Code section 34A–3–106. *See id.* § 34A–3–106. The Appeals Board reversed the ALJ and determined that, when compared to the "stress sustained by those in her own profession," Wood's work related stress was not extraordinary. *See Wood v. Labor Comm'n,* 2005 UT App 490, ¶9, 128 P.3d 41 (*Wood I* ). Wood then petitioned this court for a review of the Appeals Board's decision. We vacated the order, and remanded to the Appeals Board to consider Wood's stress in comparison with "contemporary national employment and non employment life" as required by Utah Code section 34A–3–106. *Id.* at ¶14.

¶4 On remand, the Appeals Board determined that Wood's stress was extraordinary and affirmed the ALJ's award of benefits. In making this determination, the Appeals Board first "identified Mrs. Wood's stress that 'arose predominantly and directly' from her employment," and then found that stress to be extraordinary. Petitioners now seek review of benefits award.

## ISSUE AND STANDARD OF REVIEW

¶5 Petitioners argue that the Appeals Board incorrectly interpreted the term "predominantly" as used in Utah Code section 34A–3–106(2)(a) and therefore misapplied the second part of the standard for determining legal causation. *See* Utah Code Ann. § 34A–3–106(2)(a). "An agency's interpretation or application of statutory terms should be reviewed under the correction-of-error standard." *Esquivel v. Labor Comm'n,* 2000 UT 66, ¶14, 7 P.3d 777; *see also America First Credit Union v. Department of Fin. Inst.,* 2001 UT App 272, ¶6, 33 P.3d 390 ("Matters of statutory construction are questions of law that are reviewed for correctness. Where the issue is a question of law, ... appellate review gives no deference to the trial judge's or agency's determination ...." (alterations in original) (quotations omitted)). "Additionally, if the legislative intent concerning the specific question at issue can be derived through traditional methods of statutory construction, the agency's inter-

pretation will be granted no deference and the statute will be interpreted in accord with its legislative intent." *Esquivel,* 2000 UT 66 at ¶ 14, 7 P.3d 777 (quotations omitted).

## ANALYSIS

¶ 6 Pursuant to Utah Code section 34A–3–106, mental or emotional diseases related to mental stress arising out of and in the course of employment are compensable when there is both sufficient legal and medical causation between the employee's disease and the employment. *See* Utah Code Ann. § 34A–3–106(1). Utah Code section 34A–3–106 states that:

(1) Physical, mental, or emotional diseases related to mental stress arising out of and in the course of employment shall be compensable under this chapter only when there is a sufficient legal and medical causal connection between the employee's disease and employment.

(2) (a) Legal causation requires proof of extraordinary mental stress arising predominantly and directly from employment.

*Id.* § 34A–3–106(1), (2)(a).

¶ 7 To prove legal causation, Wood was required to prove that she suffered from "extraordinary mental stress arising predominantly and directly from employment." *Id.* § 34A–3–106(2)(a). Wood argues that it was proper for the Appeals Board to identify only the portion of her stress arising predominantly from employment and then to consider whether *that* work-related stress was extraordinary. In contrast, Petitioners argue that the Appeals Board was first required to evaluate the aggregate impact of work and non-work related factors to determine if Wood's stress was "extraordinary." Then, the Appeals Board should have determined whether work related stress was predominant as compared with non-work related stress. Because the ALJ found that the work related and non-work related factors were each 50% responsible for Wood's extraordinary stress, Petitioners argue that

work related stress is not predominate and that, therefore, Wood fails to establish legal causation. Although the plain language of the statute is not without ambiguity, we believe that Petitioner's interpretation is most consistent with the analytical sequence set forth in the statute and with the legislative history.

¶ 8 Interpreting a statute "requires us to discern the true intent and purpose of the Legislature." *State v. Ireland,* 2006 UT 82, ¶ 7, 150 P.3d 532 (quotations omitted). "The best evidence of the legislature's intent and purpose is the plain language of the statute. When analyzing statutory language, we presume that the Legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *Id.* (quotations and footnote omitted).

¶ 9 The juxtaposition of the language in subsections 34A–3–106(1) and (2)(a) suggests that the determination of legal causation should be conducted in a two-stage process. The first step in the analysis is to determine whether, as a result of *all* factors, the claimant is suffering extraordinary mental stress. If extraordinary stress is proved, the next step is to determine whether the extraordinary stress arises predominantly and directly from employment. *See* Utah Code Ann. § 34A–3–106(2)(a) (requiring that the "extraordinary mental stress" must arise "predominantly and directly from employment"). We agree that the Legislature did not intend to permit a claimant to collect benefits unless the extraordinary mental stress arises predominantly from work related factors. *See id.* (allowing for compensation for diseases "arising out of and in the course of employment" *only* when there is a "medical and legal causal connection between the employee's disease and employment").[1] Therefore, to satisfy the "predominant" requirement of the legal causation test, the claimant must show that the sum of all work related stress is greater than the sum of all non-work related stress. *See Webster's Third New International Dictionary* 1786

---

1. Under Wood's approach, a claimant could recover even if non-work related factors contributed to 75% of the stress so long as the 25% of work related stresses were found to be extraordinary. We do not think this is what the Legislature intended.

(unabridged 1986) (defining "predominant" as "having superior strength, influence, authority, or position"). If the work related factors are greater, the claimant's extraordinary mental stress "arises predominately and directly from employment." Utah Code Ann. § 34A–3–106(2)(a). If the work related factors are less than the non-work related factors, the mental disease does not "arise out of and in the course of employment" and is therefore not compensable. *Id.* § 34A–3–106(1).

¶ 10 Here, the ALJ adopted the findings of the medical panel and concluded that Wood's condition arose equally from non-work related and work related stress. In reviewing the ALJ's findings, the Appeals Board failed to compare Wood's work related stress to her non-work related stress. Instead, the Appeals Board simply identified Wood's work related stresses and then considered whether that subset of stress-inducing factors was extraordinary.[2] Such an interpretation of the statute gives no effect to the term "predominantly" and therefore renders that language meaningless. Our rules of statutory construction dictate that we interpret the statute so that each word has meaning. *See Lund v. Brown,* 2000 UT 75, ¶ 23, 11 P.3d 277 ("[T]he well-established principle of statutory construction requir[es] us to give meaning, where possible, to all provisions of a statute.").

¶ 11 Further, the legislative history of section 34A–3–106 indicates that the Utah Legislature intended to limit compensation under the statute to cases where employment-related stress, as opposed to non-employment related stress, is the largest contributing factor to an employee's occupational disease.[3] Senate committee members originally crafted

the statute using the phrase "[l]egal causation requires proof of extraordinary mental stress arising *solely* and directly from employment." S.B. 130, 1995 51st Gen. Sess. (Utah 1995). In relaxing the standard to require that work related stress be the *predominant* cause—instead of the sole cause—of an occupational disease, committee members did not intend to "open the flood gates" for recovery. *Utah Occupational Disease Act of 1995:* Senate Committee of Business, Labor and Economics Meeting, 51st Gen. Sess., discussing S.B. 130, Feb. 7, 1995 (audio cassette no.2).

¶ 12 We also note that, while this is a matter of first impression in Utah, other jurisdictions have interpreted the term "predominantly" in code sections similar to Utah's compensation statute as requiring work related stress to be greater than half of the mental stress attributable to a mental injury. *See Department of Corr. v. Workers Comp. Appeals Bd.,* 76 Cal.App.4th 810, 90 Cal.Rptr.2d 716, 720 (Cal.Ct.App.1999) (interpreting the statutory language "predominant as to all causes" in California's mental stress compensation statute to mean employment experiences must contribute to more than half of the employee's injury); *May,* Board No. 030458–02; 2005 MA. Wrk. Comp. Lexis 41,*7 (Reviewing Bd. of the Dept. of Indus. Accidents of Mass. July 8, 2005) (interpreting the statutory language "predominant contributing cause" in Massachusetts's mental stress compensation statute to mean that "work cause(s) *must be greater than the sum of all non-work-related causes* "). While these jurisdictions are not controlling and their statutes are not identical to Utah's, we find their discussion of the issue helpful to our independent analysis.[4] Accordingly, we

---

**2.** Because the Appeals Board considered only Wood's work related stress, it never indicated whether it agreed with the medical panel that work related and non-work related factors were each 50% responsible for Wood's condition.

**3.** "[W]hen we find ambiguity in the statute's plain language ... we seek guidance from the legislative history and relevant policy considerations." *World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994); *see also Bonham v. Morgan,* 788 P.2d 497, 500 (Utah 1989) ("In construing ... statutes, we

attempt to ascertain legislative intent behind ambiguous language....").

**4.** Wood argues that these statutes are not helpful in interpreting the term "predominantly" as it is used in Utah Code section 34A–3–106(2)(a) because they are "clearly more broad" in their application in that they "require that the work related mental stress be the predominant cause of the mental injury, not, as Utah requires, that the extraordinary stress itself arise predominantly and directly from the employment." We disagree. Like Utah's statute, these statutes provide

conclude that "predominantly" requires a comparison of work and non-work related stress, and that in order for Wood's work stress to be predominant under Utah Code section 34A–3–106(2)(a), it must constitute more than half of the stress causing her mental injury.

¶ 13 Wood argues that because section 34A–3–110 of the Act already contemplates a pro rata reduction in benefits based on a comparison between non-work and work related causes, the Utah Legislature must not have intended to exclude mental diseases from compensation entirely when they are more attributable to non-work related stress. We disagree. Section 110 of the Act provides that *once an occupational disease is determined to be compensable,* compensation may be reduced or limited to the proportion of the disease caused by work related factors. *See* Utah Code Ann. § 34A–3–110 ("The compensation payable under this chapter shall be reduced and limited to the proportion of the compensation that would be payable if the occupational disease were the sole cause of the disability or death...."). In contrast, section 34A–3–106 defines whether a mental stress claim is compensable at all. *See id.* § 34A–3–106. Therefore, under section 106, it is first necessary to find that work related stress is the predominant cause of a mental injury before the injury can be determined compensable. *See id.* If the mental stress claim is both extraordinary and predominate it is compensable. *See id.* Once there has been a determination that a claimant has established a compensable mental stress claim, the compensation payable for that claim must be reduced to reflect the non-work related causes. *See id.* § 34A–3–110. For example, if a claimant's occupational disease was caused by extraordinary stress that was 40% non-work related and 60% work related, the claim would be compensable under section 106. The compensation available to the claimant for that disease, however, would be reduced by 40% pursuant to section 110. Mental stress claims are treated in a separate section of the Act for the purpose of narrowly defining when those claims will be compensable to any degree. *See id.* § 34A–3–106 (making occupational diseases related to mental stress compensable only when extraordinary and predominate). Section 110 applies only if the claim is compensable. Contrary to Wood's argument, we think this is precisely what the Legislature intended.

¶ 14 Wood's final argument in response to Petitioners' appeal is that the ALJ's finding that work related stress was the predominant cause of Wood's occupational disease is a finding of fact. In challenging a finding of fact, Wood contends that Petitioners must marshal evidence and show that the evidence does not substantially support the ALJ's decision. For the reasons stated above, we disagree. The medical board's initial finding that Wood's employment and non-employment stress equally caused her mental disease is a finding of fact that neither party challenges on appeal. In contrast, whether the ALJ correctly decided that the medical panel's findings satisfied the legal causation element of the statute is a question of law. Therefore the marshaling of evidence is not required.

¶ 15 Because the Appeals Board—which is unlike most appellate bodies in that it is free to find the facts for itself—never properly considered whether Wood's extraordinary stress was predominantly work related, we remand for the Appeals Board's reconsideration in light of the guidance offered in this opinion. Although Petitioners argue that the medical panel report is the only evidence on this point, we note that Wood entered medical assessments from other health care professionals that she contends refute the 50/50 apportionment contained in the report of the medical panel. To determine whether Wood has a compensable mental stress claim, the Appeals Board must enter specific factual findings that weigh and evaluate this evidence. To meet the second prong of the test for a compensable mental stress claim set forth in section 34A–3–106(2)(a), Wood's work related stress must be greater than her non-work related stress.

---

that the cause of a compensable occupational disease must be more work related than non-   work related.

CONCLUSION

¶ 16 We conclude that to establish legal causation under Utah Code section 34A–3–106 Wood must first prove she suffers from extraordinary mental stress in comparison with "contemporary national employment and non-employment life." *Wood I*, 2005 UT App 490, ¶ 14, 128 P.3d 41. Next, Wood must prove that work related stress, when compared to non-work related stress, is the predominant, or greater, cause of her occupational disease. In the instant case, the Appeals Board made no factual findings comparing the work and non-work related factors that combined to create Wood's extraordinary stress. Accordingly, we remand for entry of the appropriate findings of fact and conclusion of law supported by such findings.

¶ 17 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.